## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THOMAS MATTHEW HALE**, *et al.*, | : | **CIVIL ACTION NO. 1:21-CV-1028** |
| | : | |
| **Plaintiffs** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **KEVIN LEISS**, *et al.*, | : | |
| | : | |
| **Defendants** | : | |

### <u>MEMORANDUM</u>

In June 2021, Attorney J. Michael Considine, Jr. (hereinafter "Attorney Considine"), filed a civil rights lawsuit on behalf of Thomas Matthew Hale and Penny Lee Valentine-Hale (hereinafter "Mr. Hale" and "Mrs. Hale" or "the Hales") against Derry Township Police Department and four of its officers. The Hales terminated Attorney Considine two-and-a-half years later and, acting *pro se*, executed a settlement agreement with the defendants. After Attorney Considine and the parties filed various motions and letters concerning proper allocation of the settlement funds, the court directed the defendants to deposit the funds—less a medical lien payment of $20,000.00—into the court registry. The Clerk of Court has received those funds, and we have entered an order dismissing the case against the defendants with prejudice. Attorney Considine now moves separately for payment of attorney's fees and costs. Following an evidentiary hearing on the matter, we will grant in part and deny in part Attorney Considine's motion.

## I.    Factual Background & Procedural History[1]

### A.    Mr. Hale Retains Attorney Considine

Mr. Hale was involved in a car accident with a third party in Hershey, Pennsylvania, on August 31, 2019. (See Doc. 14 ¶ 8). Officers from Derry Township Police Department responded to the scene of the accident and interacted with Mr. Hale. (See id. ¶¶ 9-39). The officers eventually arrested Mr. Hale for, *inter alia*, aggravated assault and disorderly conduct. See Commonwealth v. Hale, No. CP-22-CR-0005187-2019, Dauphin County Court of Common Pleas Docket at 2.[2]

Mr. Hale suffered various injuries during his arrest; he obtained medical treatment at a United States Department of Veterans Affairs hospital. (See Doc. 183-1 at 4). Based on those events, Mr. Hale sought legal counsel and signed a retainer agreement with Attorney Considine on January 13, 2020. (See Doc. 182-19). Attorney Considine has been a lawyer for over 41 years and is the only lawyer and employee of his firm, J. Michael Considine, Jr., P.C. (See 10/1/24 Hr'g Tr. 12:22-13:6,

---

[1] The following factual recitation is drawn from the public filings in the above-captioned action, testimony adduced at an evidentiary hearing on October 1, 2024, and the parties' pre- and post-hearing submissions. (See Doc. 198, 10/1/24 Hr'g Tr.). The factual statements reflect the court's credibility determinations. In large measure, the court finds the testimony of Mr. and Mrs. Hale, and the testimony of Mr. Hale's brother, David Hale, to be credible. Based upon his bearing and demeanor throughout the hearing as well as his evasive responses to the court's questions (examples of which are set forth herein), the court does not find Attorney Considine's testimony to be credible.

[2] The parties largely dispute the nature and circumstances of the events leading to Mr. Hale's arrest. (Compare Doc. 107 (defendants' statement of material facts), with Doc. 116 (plaintiffs' response)). We make no determination regarding these contested facts in light of the full and final release agreed to by the parties in their settlement agreement. (See Doc. 167).

32:12-16; Docs. 193, 193-1).  In their agreement, Mr. Hale agreed to pay Attorney Considine a 40% contingency fee of the "gross amount recovered" and to reimburse him for all costs.  (See Doc. 182-19).  The agreement also contemplated Attorney Considine's termination: Mr. Hale agreed to pay him "a reasonable legal fee for the time and effort he has spent based on the outcome, and for costs he has expended" prior to his termination.  (See id.)  Attorney Considine did _not_ execute a similar agreement—written or oral—with Mrs. Hale.  (See 10/1/24 Hr'g Tr. 48:6-8).

On June 10, 2021, Attorney Considine filed a three-count complaint on behalf of _both Mr. and Mrs. Hale_, bringing claims against the defendants for First Amendment retaliation, excessive force, and loss of consortium.  (See Doc. 1 (Counts I-III)).  Approximately two months later, Attorney Considine filed a five-count amended complaint, adding state-law claims for assault and battery.  (See Doc. 14 (Counts I-V)).  The defendants timely filed a motion to dismiss the First Amendment retaliation claim.  (See Docs. 16, 18, 25).  Following the parties' briefing, we denied the motion.  (See Doc. 46).

### B.    The Discovery Phase

The court held a case management conference with the parties on September 2, 2021.  (See Doc. 20).  We subsequently issued a case management order, referred the case to court-annexed mediation, and appointed Jonathan Koltash, Esquire (hereinafter "Attorney Koltash"), as mediator.  (See Docs. 22, 24).  Attorney Considine proceeded to engage in discovery on behalf of both Mr. and Mrs. Hale.  (See, e.g., Docs. 17, 31).

3

Throughout the principal discovery period, Attorney Considine tasked the Hales and, in particular, Mrs. Hale, with conducting fact investigation and basic administrative work—tasks typically performed by an attorney, their paralegal, or their secretary. (See 10/1/24 Hr'g Tr. 47:8-11, 49:18-50:7). Mrs. Hale testified that her role included assisting with "research, filings, documents, invoices, medical documents, doctor's reports, [and preparing documents] to be submitted to the Court." (See id. at 47:8-11; see also id. at 8:23-9:1 (Attorney Considine: "Penny was very helpful in getting records."); id. at 35:21-23 (Attorney Considine: "I had many conversations with Penny. In the end, Penny refused to speak to me. But for much of the case, she was a very big help . . . .")). She also obtained videos from businesses near the scene of the incident and assisted Attorney Considine with completing basic technological tasks, such as opening a thumb drive. (See id. at 49:18-50:7; see also Doc. 196-3 (Attorney Considine email directing Hales to prepare electronic files for submission to the court)). Mrs. Hale testified that she performed these tasks in furtherance of her husband's claims for monetary damages and in response to repeated requests by Attorney Considine for assistance. (See 10/1/24 Hr'g Tr. 50:12-14). However, she also testified that her involvement was limited to helping Mr. Hale's case; at no point did she explicitly or implicitly agree to have Attorney Considine represent her. (See id. at 48:6-50:14).

Mrs. Hale first learned that Attorney Considine listed her as a plaintiff when he sent Mr. Hale the defendants' interrogatories on December 22, 2021—the same day answers to the interrogatories were due and 30 days after Attorney Considine had received them. (See id. at 47:14-48:2; Doc. 183-3 at 3). Mrs. Hale was shocked to

see her name in the case caption.  (See id. at 48:6-49:6).  She credibly testified that she "did not want to be on the case."  (See id. at 48:23-49:6).  Without specialized knowledge about how the legal system works, however, Mrs. Hale did not know how to proceed.  (See id. at 53:7-14).  She worried that reporting Attorney Considine to the court or to defense counsel would delay the proceedings and jeopardize her husband's case.  (See id.)  Mrs. Hale testified that she did not want to prolong this emotionally draining case—during which both Mr. and Mrs. Hale ostensibly experienced suicidal thoughts—because of Attorney Considine's behavior.  (See id. at 9:4-5, 53:7-14, 57:4-5, 78:24-79:3).  Stated simply, Mrs. Hale lost trust in Attorney Considine and eventually ceased all contact with him.  (See id. at 45:22-46:8, 56:6-16).

As the parties exchanged information and prepared for mediation, various discovery disputes arose.  (See, e.g., Docs. 28, 31, 36, 37, 41, 50, 54-56, 63, 67-68, 73, 84-86, 89, 90, 92).  The court referred the case to Chief Magistrate Judge Karoline Mehalchick, (see Doc. 29), who held numerous telephonic conferences with the parties to address and resolve their disputes, (see, e.g., Docs. 30, 34, 44, 52, 57, 64, 71, 74, 80, 93).  Of note, Judge Mehalchick denied Attorney Considine's request for production of Derry Township's policies and procedures as irrelevant because the amended complaint did not bring a claim against the municipality, (see Doc. 38), and she denied Attorney Considine's requests for cell phone and landline records and to depose the Derry Township Chief of Police as beyond the scope of discovery because the claims were limited to the events that occurred on August 31, 2019, (see Docs. 76, 87; see also Doc. 14).  The fact discovery period ended on August 3, 2022,

pursuant to the court's revised case management order.  (See Doc. 62).  Attorney

Considine initially testified that he participated in twenty depositions, but upon

further inquiry he acknowledged that the actual number was ten prior to court-

annexed mediation.  (See 10/1/24 Hr'g Tr. 28:9-29:11).  Attorney Considine also hired

a police expert, an orthopedic surgeon, and an expert on rehabilitation costs.  (See

id. at 9:12-15).

### C.    The Court-Annexed Mediation

The parties proceeded to mediation on September 8, 2022.  (See Doc. 95).

The Hales entered the mediation with a sense of desperation due to the stress of the

case and the deterioration of their relationship with Attorney Considine.  (See

10/1/24 Hr'g Tr. 57:1-5).  Mr. Hale's brother, David Hale, also attended the

conference.  (See id. at 76:6-8).  Attorney Koltash facilitated the mediation by

situating the parties in different rooms and engaging in shuttle diplomacy.  (See id.

at 80:22-81:2).

According to the Hales' testimony, which the court finds credible, Attorney

Considine ignored their clearly stated interest in settlement.  Attorney Considine

appeared disengaged and distracted; at one point, he expressed an interest in

leaving the mediation to undertake basic caselaw research in the courthouse

library.  (See id. at 78:1-13).[3]  Despite Attorney Considine's odd behavior, the

mediation proceeded.  Defendants ultimately offered $150,000 to settle the case,

which included a promise to inquire into dropping pending criminal charges

against Mr. Hale.  (See id. at 76:18-77:20).  Attorney Considine felt that this offer was

low, but the Hales expressed their desire to accept it.  (See id. at 57:6-22).

Specifically, they informed Attorney Considine that they wanted to accept the offer

and to close the case entirely; the Hales felt that the potential benefit of continuing

the litigation was not worth the mental, emotional, and financial cost.  (See id.)

According to Mrs. Hale and David Hale, their request to settle outraged Attorney

Considine.  (See id. at 57:6-22, 76:11-15).  In a fit of pique, he told the Hales that the

proposal was insufficient and that they must listen to him: "[Y]ou can get more

money, I refuse to settle this case."  (See id. at 57:14-22; see also id. at 57:6-8 ("He

[Attorney Considine] threw a temper tantrum[.]")).  Contrary to their explicit

instructions to settle, Attorney Considine informed the mediator that the Hales

would not accept the offer.  (See id.)  The court acknowledges Attorney Considine's

conflicting testimony about the mediation that he "did what they told me to even

though it was, to me, not in their best interest, and we had discussions about that."

---

[3] Attorney Considine's post-hearing submissions also leave much to be
desired.  He largely relies on an inapposite case from 1904, see Williams v. City of
Philadelphia, 57 A. 578 (Pa. 1904), and a New York lower court case that was
reversed because it awarded a terminated attorney a contingency fee without
assessing the value of his work or whether the client terminated him for cause, see
Byrne v. Leblond, 786 N.Y.S. 2d 722 (N.Y. Sup. Ct. 2004), rev'd and remanded,
811 N.Y.S.2d 681 (N.Y. App. Div. 2006).

(See id. at 73:14-16). To be clear, the court does not find this testimony to be credible.

We credit the testimony of David Hale who testified that Attorney Considine refused to advance the Hale's proposal for $150,000 and a promise to pursue the termination of criminal charges against Mr. Hale. He testified that Attorney Considine "was very unprofessional, actually refused to shake [opposing counsel's] hand, . . . refused to meet with Mr. Koltash and [opposing counsel to finalize the proposal]," and eventually "just walked out" of the mediation. (See id. at 77:3-7). Attorney Koltash subsequently filed a report with the court stating that the case did not settle. (See Doc. 95).

Three weeks later—and nearly two months after the fact discovery deadline—Attorney Considine moved for production of certain cell phone records and taser logs and to extend the discovery deadlines. (See Doc. 99). Judge Mehalchick denied Attorney Considine's motion because the request was untimely and all discoverable materials relevant to the existing claims had been produced. (See Doc. 101 at 8-12; Doc. 102). Attorney Considine appealed the ruling. (See Doc. 103). The undersigned denied his appeal on January 12, 2023, agreeing with Judge Mehalchick's *ratio decidendi*. (See Doc. 122 at 1-3).

Attorney Considine also moved for leave to file a second amended complaint to broaden the scope of discovery by adding new allegations related to the defendants' post-arrest conduct and by adding claims for false arrest and malicious prosecution. (See Docs. 103, 121; see also Doc. 129 (construing "falsification of affidavit" claim as one for malicious prosecution)). The court denied his motion on

8

July 25, 2023, concluding that the new claims "either have not accrued or are manifestly untimely without excuse, do not relate back to plaintiffs' original pleadings, and would unduly and substantially prejudice the defendants." (See Doc. 129 at 3-4). With discovery closed, the court was set to consider the defendants' partial motion for summary judgment. (See Docs. 106-111, 115-119).

### D.    The Settlement Conference

On September 27, 2023, Attorney Considine filed a letter with the court requesting referral to a magistrate judge for a settlement conference. (See Doc. 130). Judge Mehalchick referred the case to Magistrate Judge Susan E. Schwab, and the undersigned held the defendants' pending partial motion for summary judgment in abeyance. (See Doc. 131). Judge Schwab held a video settlement conference with the parties over Zoom on December 14, 2023. (See Doc. 141).

The Hales entered the conference determined to reach a settlement. (See 10/1/24 Hr'g Tr. 55:14-19; see also id. at 58:8-10 ("[I]t's been five years since this nightmare has been in our lives.")). David Hale also participated on their behalf. (See id. at 78:15-79:3). Attorney Considine joined the settlement conference dismissive of the Hales' clear desire to settle the case. (See id. at 58:1-16, 78:15-79:21). He repeatedly called David Hale during the conference, urging him to convince the Hales not to settle. (See id. at 78:15-79:3). David Hale, who is not a lawyer, responded by instructing Attorney Considine that he had a professional obligation to let his client make decisions concerning settlement. (See id.) When the Hales attempted to accept the defendants' offer of $200,000, Attorney Considine

"refused to accept it."  (See id. at 58:1-16).  He repeated his mantra: he was their lawyer, and they must listen to him.  (See id.)  When the Hales stood fast in their desire to settle, Attorney Considine abruptly left the Zoom conference and did not answer or return calls from Judge Schwab or the Hales.  (See id. at 58:1-10 ("He ghosted Judge Schwab."); id. at 79:9-21 ("[Judge Schwab] tried calling him over the next 20 or 30 minutes, Considine, and could not get him on the phone.")).  In light of Attorney Considine's refusal to communicate with Judge Schwab and the Hales' unequivocal decision to accept the settlement, Judge Schwab reported the case settled at the conclusion of the four-and-a-half-hour conference.  (See Doc. 141).

On January 8, 2024, Attorney Considine reinstituted communications with Judge Schwab, filing a letter asserting that defense counsel would not send him the settlement agreement.  (See Doc. 142).  He also filed a motion to enforce the settlement.  (See Doc. 143).  Ten days later, defense counsel emailed the settlement agreement to Attorney Considine, who forwarded the agreement to the Hales nine minutes later with the following message: "I just received the release right now but have not read it.  Please date and sign it and return it to me . . . ."  (See Doc. 183-1 at 1).  The Hales refused to sign the agreement before understanding its terms, and they complained to Attorney Considine about his failure of counsel.  (See id.)

On February 7, 2024, Attorney Considine filed another letter with the court stating that his clients refused to sign the settlement agreement; he asked for the matter to be referred to the undersigned.  (See Doc. 146).  The same day—February 7—Mr. Hale formally terminated Attorney Considine as his attorney by email, phone, and certified mail.  (See Doc. 183-4 at 16-19; Doc. 196-3 at 105).

Attorney Considine continued communicating with defense counsel about the settlement funds and again moved to enforce the settlement. (See Docs. 148, 153, 196-1 at 128-29). He also continued contacting the Department of Veterans Affairs concerning Mr. Hale's medical lien, which he later claimed to have negotiated down to $32,000. (See Docs. 183-1 at 2, 196-1 at 128). Apparently unbeknownst to Attorney Considine, Mr. Hale successfully negotiated a more favorable resolution of the medical lien, reducing his obligation to $20,000. (See 10/1/24 Hr'g Tr. 70:8-71:2). On March 22, 2024, the court issued an order terminating Attorney Considine as the Hales' counsel of record and denying his motions to enforce. (See Doc. 161). The Hales ultimately signed a settlement agreement with the defendants for $200,000 on April 18, 2024. (See Doc. 167). The agreement includes a provision directing the defendants to pay $20,000 to the Department of Veterans Affairs to satisfy Mr. Hale's medical lien. (See id. at 6; see also Docs. 167-1, 167-2).

**E.    The Present Motion**

Attorney Considine filed the instant motion to establish an attorney's charging lien and for disbursement of funds. (See Doc. 163). After reviewing the finalized settlement agreement *in camera*, the court ordered the defendants to pay $20,000 to the Department of Veterans Affairs as agreed to by the parties and to deposit the remaining $180,000 into the Court Registry. (See Doc. 168). The defendants complied with that order, (see Docs. 170, 175-1), and the court granted the parties' stipulation dismissing the defendants from the case with prejudice on June 13, 2024, (see Doc. 176). The court held an evidentiary hearing on Attorney

Considine's motion on October 1, 2024, and the parties filed pre- and post-hearing memoranda.  The motion is fully briefed and ripe for disposition.

## II.    <u>Legal Standard</u>

Under Pennsylvania law, a client may terminate their "attorney at any time, regardless of whether there exists a contract for fees."  <u>See</u> <u>Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.</u>, 179 A.3d 1093, 1099 (Pa. 2018) (citation omitted).  If an attorney is terminated before a contingency-fee event occurs, they are not due the contingency fee but may seek "payment under a theory of *quantum meruit* for services rendered to that client."  <u>See</u> <u>id.</u> (citation omitted).  To succeed under this theory, an attorney must show (1) the benefits he provided to plaintiffs, (2) plaintiffs' appreciation of those benefits, and (3) plaintiffs' "acceptance and retention of [the] benefits under such circumstances that it would be inequitable for [plaintiffs] to retain the benefit[s] without payment of value."  <u>See</u> <u>*In re* Thorpe</u>, 755 F. App'x 177, 183 (3d Cir. 2018) (nonprecedential) (cleaned up) (citation omitted).[4]  An attorney's equitable claim for *quantum meruit* may be barred under the doctrine of unclean hands if his "conduct was so far beyond the pale of acceptable attorney behavior, and so harmful to the individuals involved, that it was 'unconscionable' and 'shock[ed] the conscience' of

---

[4] A reviewing court must focus not on the parties' intentions, but instead on whether the attorney's actions unjustly enriched plaintiffs.  <u>See</u> <u>Meyer</u>, 179 A.3d at 1102 (citations omitted).  Any award for damages in *quantum meruit* is "limited to the reasonable value of the services performed."  <u>See</u> <u>Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C</u>, 137 A.3d 1247, 1251 n.6 (Pa. 2016) (citation omitted).

the Court." See id. at 182 (quoting *In re* Est. of Pedrick, 482 A.2d 215, 223 & n.14
(Pa. 1984)).[5]

## III.    Discussion

Attorney Considine claims to have represented both Mr. and Mrs. Hale from
January 2020 until February 2024.  He now moves for attorney's fees and costs
based on his written agreement with Mr. Hale and his purported oral agreement
with Mrs. Hale.  (See Docs. 163, 193).  Attorney Considine seeks $80,000 in attorney's
fees based on a 40% contingency fee agreement, or, in the alternative, for the same
amount in *quantum meruit*.  (See Doc. 193 at 4-5).  He also seeks reimbursement for
$17,429.85 in costs.  (See Doc. 187-1; Doc. 193 at 5).

Attorney Considine is clearly not entitled to a contingency fee because it is
undisputed that he was terminated by Mr. Hale on February 7, 2024, prior to
consummation of settlement.  Moreover, as set forth below, the court finds that
Attorney Considine did not have a valid contingency fee agreement with Mrs. Hale
and is not entitled to any payment from her.  Accordingly, the court will analyze
Attorney Considine's request for fees as an equitable claim sounding in *quantum
meruit*.

### A.    Attorney's Fees

The court holds that Attorney Considine is not entitled to attorney's fees
because of his unethical and unconscionable behavior.

---

[5] A mere violation of an ethical rule governing lawyers, without more, may be
insufficient for a finding of unclean hands.  See *In re* Thorpe, 755 F. App'x at 182
(citing *In re* Est. of Pedrick, 482 A.2d at 222-23).

### 1.    *Mrs. Hale*

I begin with Attorney Considine's purported representation of Mrs. Hale. The Pennsylvania Rules of Professional Conduct require an attorney to communicate "the basis or rate of the fee . . . in writing" to a new client.  See PA. R. PRO. CONDUCT 1.5(b).  Rule 1.5 further states that "[a] contingency fee agreement shall be in writing" and must describe the method of how the fee will be calculated and paid.  See PA. R. PRO. CONDUCT 1.5(c).[6]  Thus, Attorney Considine's assertion of an oral contingency fee agreement necessarily reflects a patent violation of the Rules of Professional Conduct.

While courts generally presume that an attorney who files a pleading on behalf of a party has authority to do so, "no person has the right to appear as another's attorney without the other's authority."  See SEI Corp. v. Norton & Co., 631 F. Supp. 497, 501 (E.D. Pa. 1986) (citing, *inter alia*, Pueblo of Santa Rosa v. Fall, 273 U.S. 315, 319-21 (1927)).  Under Pennsylvania law, an agency relationship has three elements: (1) "the manifestation by the principal that the agent shall act for him," (2) "the agent's acceptance of the undertaking," and (3) "the understanding of the parties that the principal is to be in control of the undertaking." *In re* Rotavirus Vaccines Antitrust Litig., 30 F.4th 148, 154 (3d Cir. 2022) (quoting Commonwealth v. Britton, 229 A.3d 590, 598 (Pa. 2020)).  Such a relationship may be established by showing "actual (or express) authority, apparent authority, implied authority, or

---

[6]  But see Novinger v. E.I. DuPont de Nemours & Co., 809 F.2d 212, 218 (3d Cir. 1987) (citing Silverstein v. Hirst, 103 A.2d 734, 737 (Pa. 1954) ("[T]he absence of such a writing does not make oral contingent fee arrangements unenforceable.").

agency by estoppel."  See Rantnetwork, Inc. v. Underwood, No. 4:11-CV-1283, 2012 WL 1021326, at *5 (M.D. Pa. Mar. 26, 2012) (Conner, J.) (citations omitted).  An agency relationship is a question of fact, and the party asserting its existence must prove it by a preponderance of the evidence.  See id. (citing Volunteer Fire Co. of New Buffalo v. Hilltop Oil Co., 602 A.2d 1348, 1351 (Pa. Super. Ct. 1992)).

The court finds that Mrs. Hale never authorized Attorney Considine to represent her.  Attorney Considine failed to communicate his fee rate or the purported contingency fee agreement to Mrs. Hale in writing.  (See 10/1/24 Hr'g Tr. 10:7-11).  His insistence that she orally hired him lacks credibility and is unsupported by the factual record.  (See id. at 10:1-24; Doc. 182 at 2).  Attorney Considine filed a claim on Mrs. Hale's behalf in the original complaint on June 10, 2021.  (See Doc. 1; see also M.D. Pa. L.R. 83.14 (signing pleading deemed entry of appearance).  Mrs. Hale testified credibly that she did not agree to be named in the lawsuit and did not know that she was named as a party until December 2021.  (See 10/1/24 Hr'g Tr. 47:12-49:6).

Attorney Considine initially suggested that Mrs. Hale's acts and omissions after that date demonstrate that she ratified and agreed to his continued representation of her.  (See Doc. 193 at 1; see also 10/1/24 Hr'g Tr. 10:21-22 ("She allowed me to go forward with it.  She didn't say no.")).  Attorney Considine's testimony about Mrs. Hale's assent to his representation was highly suspect.  As reflected in the following exchange, Attorney Considine avoided the assertion of an actual agreement until pressed by the court's questions:

THE COURT: I understand that you have an expert report that [purports] to address the damages suffered by Mrs. Hale as a result of Mr. Hale's injuries and the loss of consortium.  What I don't have is any authorization by Mrs. Hale to retain your services to bring a loss of consortium claim.

MR. CONSIDINE: Yes.  And, Your Honor, I cite in the case law that there can be an oral agreement, even an oral contingency fee agreement, if you see the cases I cited. I can give them back to you.

THE COURT: I'm just interested in the factual response.

MR. CONSIDINE: Right.  She did not sign a retainer agreement, that's true.

THE COURT: Did she sign anything authorizing you to represent her in this matter, Hale versus Leiss?

MR. CONSIDINE: No, she didn't.  But we discussed it, she knew she had a claim and I went on and represented her, and then her husband admitted she had a claim.

THE COURT: Well, having a claim and recognizing that you have a claim and authorizing an attorney to pursue that claim are two completely different things.

MR. CONSIDINE: I understand that.

THE COURT: What factual information do you have that she authorized you to pursue this claim on her behalf?

MR. CONSIDINE: We discussed her having a claim.  She knew I was going forward with it.  She allowed me to go forward with it.  She didn't say no.  She got –

THE COURT: Did she assent to it?

MR. CONSIDINE: Yes.

(See 10/1/24 Hr'g Tr. 9:20-10:24).  Based upon his bearing and demeanor as well as

his meandering and evasive responses during this exchange, the court does not

16

credit Attorney Considine's testimony that Mrs. Hale assented to his representation of her in a claim for loss of consortium.

Moreover, Mrs. Hale provided an intelligent and compelling explanation for her post-notification conduct. She emphasized that she never agreed to let Attorney Considine act on her behalf. (See id. at 51:24-52:25). Her communications with him were solely in furtherance of her husband's claims, ironically as Attorney Considine's unpaid paralegal. (See id. at 48:6-50:14, 51:24-52:25). Once notified of his unauthorized representation, she refused to speak with him, explaining to him during her testimony: "It's absolutely 100 percent because I did not want you to represent me, I did not." (See id. at 56:15-16). Mrs. Hale's failure to report Attorney Considine's behavior was the product of her concern that exposing him would undermine her husband's case, not the loss of consortium claim. (See id. at 53:7-10 ("I knew there would be a lot of legalities to go in and take me off this case and I didn't want to ruin it for my husband.")). When asked why Mrs. Hale provided information to an expert regarding her lost wages, she clarified that she provided the expert the Hales' jointly filed tax returns—one of the many documents she gathered to help her husband's case. (See id. at 54:7-55:2). The evidentiary hearing also revealed that Attorney Considine regularly misinformed and belittled the Hales concerning their rights in this matter. (See id. at 57:1-58:16). For example, he told them that it is *his* "right" to deny a settlement offer because he has "their best interest at heart." (See id.)

Overall, I am convinced by Mrs. Hale's testimony that Attorney Considine misled her about her rights and his authority as Mr. Hale's attorney, and I find that

her delay in reporting his unauthorized conduct was justified and reasonable under the circumstances. I further find that Attorney Considine never received authority to represent Mrs. Hale in this matter, and he is not entitled to any attorney's fees for the work he purportedly did on her behalf.

### 2. *Mr. Hale*

An attorney is not entitled to a contingency fee if the contingency event does not occur during his representation of the client. See <u>Meyer</u>, 179 A.3d at 1099 (citation omitted). Attorney Considine and Mr. Hale signed a written retainer agreement in January 2020. (<u>See</u> Doc. 182-19). The agreement included a 40% contingency fee of the "gross amount recovered" and explained that Attorney Considine would be entitled to "a reasonable legal fee" for services rendered if Mr. Hale terminated him. (<u>See</u> <u>id.</u>) Mr. Hale terminated Attorney Considine on February 7, 2024. (<u>See</u> Doc. 196-3 at 105). The Hales and the defendants finalized their settlement agreement more than two months later, on April 18, 2024. (<u>See</u> Doc. 167 at 7). Given the timing of his termination *vis-à-vis* the final agreement, Attorney Considine is not entitled to the contingency fee. See <u>Meyer</u>, 179 A.3d at 1099 (citation omitted).

An attorney may seek fees under a theory of *quantum meruit* based on the "reasonable value of the services performed." See <u>Meyer</u>, 137 A.3d at 1251 n.6 (citation omitted). But such an award may be barred under the doctrine of unclean hands. See <u>In re</u> <u>Est. of Pedrick</u>, 482 A.2d at 223 (collecting cases). That doctrine only bars relief "where the wrongdoing directly affects the relationship subsisting between the parties and is directly connected with the matter in controversy."

18

<u>See</u> <u>id.</u>  For example, in <u>Pedrick</u>, the doctrine barred recovery because the attorney misused the probate process to benefit himself while taking advantage of his dying client—"the very conduct which the accepted standards of the profession preclude."  <u>See</u> <u>In re</u> <u>Thorpe</u>, 755 F. App'x at 182 (quoting <u>In re</u> <u>Est. of Pedrick</u>, 482 A.2d at 223 & n.14).  The court concludes that Attorney Considine is not entitled to an award in equity.

In the matter *sub judice*, Attorney Considine twice attempted to subvert Mr. Hale's express desire to settle the case.  The Pennsylvania Rules of Professional Conduct command that "a lawyer shall abide by a client's decision whether to settle a matter."  <u>See</u> PA. R. PRO. CONDUCT 1.2(a).  This commandment is a fundamental hallmark of the attorney-client relationship.  On September 8, 2022, Attorney Considine directly violated this principle by single-handedly preventing Mr. Hale from accepting the defendants' settlement offer.  (<u>See</u> 10/1/24 Hr'g Tr. 57:1-58:16).  Mr. Hale informed Attorney Considine of his decision to accept the $150,000 offer and to end the case.  (<u>See</u> <u>id.</u> at 57:6-8).  Although the offer did not guarantee dismissal of criminal charges pending against Mr. Hale, the consistent and credible testimony of Mr. Hale, Mrs. Hale, and David Hale establishes that Mr. Hale was willing to accept the settlement regardless of the outcome of those charges.  (<u>See</u> <u>id.</u> at 57:9-17, 76:11-77:7; <u>see also</u> <u>id.</u> at 59:9-60:1).

Attorney Considine concedes that Mr. Hale "capitulated and agreed to $150,000" at the conference.  (<u>See</u> Doc. 197 ¶ 12).  But Attorney Considine deemed that amount to be "too low," (<u>see</u> <u>id.</u>), and he did not let the settlement occur, (<u>see</u> 10/1/24 Hr'g Tr. 57:6-24).  We credit Mrs. Hale's testimony that Attorney Considine

"threw a temper tantrum in the room and said that 'I refuse, you can get more money, you can get more money, I refuse to settle this case.'" (See id. at 57:18-20; accord id. at 76:13 (David Hale's testimony)). His obstructive conduct—including his refusal to enter the same room as opposing counsel to convey his client's decision—is appalling. (See id. at 77:1-20, 80:25-81:22). His actions are particularly egregious due to the mental and emotional cost of the continued litigation on Mr. Hale and his family. (See id. at 78:22-79:3 (David Hale testifying that both Mr. and Mrs. Hale experienced suicidal thoughts)).

I also credit the testimony of Mr. and Mrs. Hale and David Hale concerning the events leading up to and during the settlement conference on December 14, 2023. (See id. at 58:1-16, 78:15-79:21).[7] Attorney Considine was not prepared for the conference, disrupted the proceedings, and was unresponsive to both Mr. Hale and Judge Schwab. (See id.) When Mr. Hale attempted to accept the defendants' offer

---

[7] The court further finds that the majority of Attorney Considine's legal work after the September 2022 mediation was non-essential and, in certain respects, frivolous. One month after the conference, Judge Mehalchick denied Attorney Considine's request for irrelevant documents and his belated request to extend the discovery deadline. (See Docs. 101, 102). He objected to that ruling, and we denied his appeal in January 2023. (See Doc. 122). In response, Attorney Considine sought leave to file a second amended complaint, ostensibly to expand the scope of discovery by alleging additional facts and two new claims. (See Doc. 121; see also Docs. 125, 128). We denied that motion on July 7, 2023, concluding it was "felled by several legal barriers, to wit: plaintiffs assert new claims that either have not accrued or are untimely without excuse." (See Doc. 129 at 3-5). Two months later— one year after Attorney Considine obstructed the first settlement offer—he filed a letter with the court requesting assignment to a magistrate judge for a settlement conference. (See Doc. 130). With the exception of the deposition of an expert witness taken on December 29, 2022, the court is not convinced that Attorney Considine's efforts during that year conferred any meaningful benefit on Mr. Hale.

of $200,000, Attorney Considine again attempted to veto his client's decision.  (See id. at 58:1-16, 78:17-21).  Mrs. Hale testified that: "He refused to accept the deal.  He kept saying over and over, 'you can get more money, it's my right, I can tell them not to take the deal, you can't accept the deal, I have the client's best interests at heart.'"  (See id. at 58:5-8).  And when Mr. Hale rejected his demands to spurn the defendants' offer, Attorney Considine purposefully left the Zoom conference and "ghosted" Judge Schwab.  (See id. at 58:1-10, 79:9-21).  For his part, Attorney Considine admits only that he "tried to convince Plaintiffs not to accept the $200,000" and that he had an "argument" with the Hales because the proposal was "not in their best interest."  (See Doc. 197 ¶ 14; 10/1/24 Hr'g Tr. 73:14-19).  To be clear, I find the Hales' and David Hales' descriptions of Attorney Considine's highly inappropriate conduct at the settlement conference to be most credible.  I also conclude that Attorney Considine's conduct in abandoning his client during a critical stage of the settlement conference constitutes an egregious violation of his professional duties to Mr. Hale and to the court.  See PA. R. PRO. CONDUCT 1.2-1.4, 3.2.  Judge Schwab, unlike Attorney Considine, properly acknowledged Mr. Hale's decision and reported the case as settled.  (See Doc. 141).  The court finds that the additional $50,000 contained in this offer is attributable to the Hales' preparation for the conference and Judge Schwab's facilitation of it, and is in no way attributable to Attorney Considine's conduct.

Throughout his representation, Attorney Considine misrepresented the scope of his authority to the Hales.  He wrongfully claimed to have an oral contingency fee agreement with Mrs. Hale, and he filed a claim on her behalf

without authorization.  During both the mediation and the settlement conference,

Attorney Considine deliberately violated rules of professional conduct that govern

the attorney-client relationship.  See, e.g., PA. R. PRO. CONDUCT 1.2(a).  His wrongful

conduct caused unnecessary mental, emotional, and financial harm to the Hales.

His misrepresentations of authority and blatant disregard for his client's rights, his

obstructive conduct at the mediation, and his abandonment of Mr. Hale during the

settlement conference are inexcusable and "shock the conscience" of the court.  See

In re Est. of Pedrick, 482 A.2d at 544.  Attorney Considine's behavior constitutes

"the very conduct which the accepted standards of the profession preclude."  See

In re Thorpe, 755 F. App'x at 182 (quoting In re Est. of Pedrick, 482 A.2d at 223

& n.14).  The court concludes that he is barred from an award in equity under the

doctrine of unclean hands.[8]

**B.    Costs**

Lastly, the court finds that Attorney Considine is entitled to reimbursement

for most of his costs in this matter.  In advance of the evidentiary hearing, Attorney

Considine submitted a ledger detailing 29 separate costs incurred prior to his

---

[8] Exemplifying his distorted view of the attorney-client relationship, Attorney Considine brazenly attempted to obtain the settlement funds from defense counsel after the Hales formally terminated his representation.  He testified indignantly that defense counsel had refused to communicate with him, leading to this exchange with the court:

> THE COURT:  Well, you had been terminated at that point, correct?

> MR. CONSIDINE:  I had been terminated, but I still had a right in my own basis to work for them.

(See 10/1/24 Hr'g Tr. 7:13-16).

termination on February 7, 2024.  (See Doc. 187-1).[9]  These costs total $17,269.51.

(See id.)  Attorney Considine testified that these costs were legitimate, reasonable,

and necessary.  (See 10/1/24 Hr'g Tr. 7:19-8:9).  He also testified that he discussed

them with Mr. Hale as they accrued, and Mr. Hale did not offer evidence to the

contrary.  (See id.)  Attorney Considine submitted copies of 19 different checks paid

for line items included in the ledger, corroborating $17,081.45 of the costs.  (See

Docs. 192-2 through 192-21).[10]

We credit Attorney Considine with expending $17,259.16 in costs in this

matter.  These costs were essential to the litigation regardless of who represented

Mr. Hale.  This amount includes $2,828.00 in expert fees that were paid after

Attorney Considine sabotaged the mediation conference on September 8, 2022,

because the work performed by these experts likely increased Mr. Hale's

negotiating position at the December settlement conference.  (See Doc. 187-1).[11]

---

[9] The ledger also lists six costs incurred after his termination.  (See Doc. 187-1).  Attorney Considine is not entitled to these costs because they did not confer any benefit on the Hales, and he has provided no authority supporting an award for his personal legal expenses.  See In re Thorpe, 602 B.R. 906, 913 n.4 (Bankr. E.D. Pa. 2019) (citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 245 (1975)).

[10] Attorney Considine submitted 20 copies of checks paid, but one of them is a duplicate.  (Compare Doc. 192-18, with Doc. 192-20).  We also note that the check paid to "ERSA Court Reporters" on May 20, 2022, shows a payment of $661.05, while the ledger lists that same payment as $546.00 only.  (Compare Doc. 193-15, with Doc. 187-1).  We find the documentary evidence to be compelling and use the $661.05 figure for purposes of our calculations.

[11] Attorney Considine paid for orthopedic surgeon Dr. Randall Smith's supplemental expert report and the trial deposition of police expert Paul McCauley, Ph.D., between October 2022 and January 2023.  (See Doc. 182-20).

We find that reimbursing Attorney Considine for $17,259.16 in costs is fair and reasonable under the circumstances.

IV.    **Conclusion**

We will grant in part and deny in part Attorney Considine's motion for disbursement of funds to cover his attorney's fees and costs.  He is entitled to costs expended as outlined above, and the Hales are entitled to the remaining settlement funds.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    December 5, 2024